UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STANISLAW BIALAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:26 CV 67 JMB |
| | ) | |
| MARRIOTT HOTEL SERVICES, INC. and | ) | |
| UNITE HERE LOCAL #74, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

Now pending before the Court is Defendant Unite Here Local #74's Motion to Dismiss (Doc. 10) to which Defendant Marriott Hotel Services, Inc. has joined (Doc. 13).  For the reasons set forth below, the Motion is **GRANTED**.

**Background**

According to the Complaint (Doc. 1-1), Plaintiff Stanislaw Bialas is an employee of Defendant Marriott Hotel Services, Inc. as a banquet server at its Marriott St. Louis Grand Hotel. He is also a member of a union, Defendant Unite Here Local #74.  Plaintiff alleges that banquet servers and bartenders are entitled to a share of the tips (gratuity fees) received by Marriott for hosting private banquets, pursuant to a Collective Bargaining Agreement in effect from July 1, 2025 to June 30, 2029.  Plaintiff claims, however, that the tips were distributed amongst persons other than servers and bartenders, which diminished his percentage of the tip amount.  While Plaintiff states that he does not know the exact dollar amount of the tips he should have received, he claims that Marriott is continuing to deprive him of his percentage as required by the CBA. Plaintiff further asked Local 74 to file a grievance or take other appropriate actions against Marriott on multiple occasions, but it refused to act.  Plaintiff seeks a declaratory judgment as to his

interpretation of the CBA (Count I); and, that Marriott failed to comply with the terms of the CBA

and that Local 74 failed to enforce the terms of the CBA on his behalf (Count II).

Attached to the Complaint is the 2025-2029 CBA which states, in relevant part:

> Whenever booking private partes, Employer shall endeavor to make arrangements for a twenty-four percent (24%) gratuity.  The Employer shall retain 29.16% and 70.84% shall be distributed equally among the servers and bartenders using the Tip Point System serving the particular affair.  Banquet service charge amounts paid to the Hotel in excess of 24% shall be retained by the Hotel.

(CBA, Article 19, Section 1 (Doc. 1-1, p. 21)).  The CBA also contains a grievance procedure if a

dispute arose between Marriott and the Union (CBA, Article 8 (Doc. 1-1, p. 18)).

On November 20, 2023, Plaintiff filed a lawsuit in the Circuit Court of St. Louis County

styled *Bialas v. Marriot International, Inc.*, 23 SL-CC05003.  In that case, Plaintiff made the same

allegations against Marriott: that it failed to pay him a correct proportion of the tips as set forth in

a pervious iteration of the CBA (effective from 2014 to 2024) that contained the same relevant

language as contained in the 2025-2029 CBA.  The matter was removed to this Court, Case No.

4:24-cv-71-HEA, and Marriott filed a motion to dismiss arguing that Plaintiff failed to exhaust the

grievance procedure outlined in the CBA prior to filing suit as required by the Labor Management

Relations Act, 29 U.S.C. § 185(a), and relevant case authority (Doc. 19 in that case).  Smegal v.

Gateway Foods of Minneapolis, Inc., 763 F.2d 354, 358-359 (8th Cir. 1985) ("For employees to

maintain a suit against their employer under 301(a) of the Labor Management Relations Act they

must exhaust any exclusive grievance and arbitration procedures established under the collective

bargaining agreement.").  Plaintiff did not respond to the motion and District Judge Henry Edward

Autrey dismissed the case on April 24, 2024 (Doc. 20 in that case).

Local 74 now moves to dismiss the present lawsuit, arguing that Plaintiff's claims are

barred by an applicable 6-month limitations period.  Marriott joins the Motion to Dismiss, noting

that while Plaintiff may file suit against it, provided that he also alleges that Local 74 breached its duty of fair representation, the claims against it are likewise time-barred (Doc. 14).

**Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2).  However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  "Though 'matters outside the pleadings' may not be considered in

deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted). Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003). Stated more comprehensively, courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean, 858 F.3d at 526 (quoting Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (internal quotation and citation omitted)).

Generally, a statute of limitations defense is an affirmative defense that would not ordinarily support a Rule 12(b)(6) motion to dismiss unless the Complaint itself supports the defense. Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011).

## Discussion

The parties agree that Plaintiff's Complaint is characterized as a hybrid action under Section 301 of the LMRA and the National Labor Relations Act, in that Plaintiff claims both that Marriott violated the terms of the CBA and that Local 74 breached its duty of fair representation. See DelCostello v. International Broth. Of Teamsters, 462 U.S. 151 (1983); Scott v. United Auto, 242 F.3d 837, 839 (8th Cir. 2001). This hybrid claim is governed by a 6-month limitations period. DelCostello, 462 U.S. 151. "The statute of limitations begins running when the employee 'should

reasonably have known of the union's alleged breach.'"  Scott, 242 F.3d at 839 (quoting Evans v. Northwest Airlines, Inc., 29 F.3d 438, 441 (8th Cir. 1994).  A union's refusal to file a grievance or arbitrate a member's complaint triggers the beginning of the limitations period for a claim of breach of duty of fair representation.  Alcorn v. Burlington Northern R. Co., 878 F.2d 1105, 1108 (8th Cir. 1999).

Defendants argue that Plaintiff's claims accrued, and the statute of limitations began to run, when he was placed on notice that Local 74 would not pursue a grievance against Marriott in relation to the allocation of banquet tips.  To support this argument, Defendants rely on correspondence between Plaintiff's and Local 74's attorneys dated January 24, 2024, January 26, 2024, March 29, 2024, April 10, 2024, and May 2, 2024 (Docs. 11-3 – 11-8).  In his Complaint, Plaintiff asserts that he "repeatedly requested and petitioned Defendant Union to file a grievance against Defendant Marriott and to take all other appropriate actions" in pursuance of his claims "including numerous written and oral requests by Plaintiff directed to Kim Barmolom [sic] and other officers of Defendant Union  . . . [to] fairly represent Plaintiff." (Doc. 1-1, p. 11-12).  He further alleges that "Defendant Union, through its officers and representatives, have repeatedly failed and refused to file a demand, request, or grievance" regarding his claims (Doc. 1-1, p. 12). The letters attached to Local 74's brief represent the correspondence that Plaintiff refers to in his Complaint.  As such, the correspondence is embraced by the Complaint and, while Plaintiff argues that the documents should not be considered, there is no suggestion that they are inauthentic. Accordingly, the Court will consider the documents attached to Local 74's memorandum and it is unnecessary to covert its motion to dismiss into one for summary judgment.

It is apparent from the letters that Plaintiff requested Local 74 file a grievance concerning the allegations raised in the Complaint as early as August, 2023.  In that month, Plaintiff stated

that he submitted a written petition to the union, and orally requested a grievance during a meeting, as set forth in a January 24, 2024 letter from Plaintiff's attorney to Kim Bartholomew, Local 74's representative (Doc. 11-4).    In response to that letter, Local 74's attorney informed Plaintiff that Local 74 did not receive a written petition and that Plaintiff's claims regarding the tip allocation are without merit (Doc. 11-5).  Two months later, on March 29, 2024, Plaintiff submitted a letter, signed by Plaintiff and others, specifically requesting that a grievance be submitted to Marriott as to their claims (Doc. 11-6).  In response, Local 74 states that it investigated the claims and found them to be without merit and that it believes that no violation of the CBA exists; Local 74 further informed Plaintiff that it believes his claims of breach of duty of fair representation are time-barred (Doc. 11-7).  After Plaintiff identified some banquets where tips may have been mis-allocated, Local 74 again indicated that there was no basis for filing a grievance in a letter dated May 2, 2024 (Doc. 11-8).  See Alcorn, 878 F.2d at 1108 (finding that the statute of limitations ran when plaintiff was expressly informed that the union would not file a grievance).  Accordingly, from August 2023 to May, 2024, Plaintiff was informed on multiple occasions that Local 74 would not file a grievance related to his claims.  Even if the final letter is considered, Plaintiff's claim accrued on May 2, 2024 and the statute of limitations expired on November 2, 2024.  Plaintiff's complaint was not filed until November 13, 2025, a year late.  As such, it appears that Plaintiff's claim of breach of duty of fair representation against Local 74 is untimely and must be dismissed.  And, because Plaintiff's claim against Local 74 is time-barred, his claims against Marriott would likewise be time-barred.  Scott, 242 F.3d at 840.

Plaintiff argues, however, that he is only asserting claims related to the CBA effective from July 1, 2025 to June 30, 2029 (and not the previous iteration of the CBA) and seeks damages from July 1, 2025 through the date of the Complaint.  Plaintiff claims that because he is seeking relief

Page **6** of **10**

pursuant to a "new" CBA, his claims are not time-barred because this lawsuit was filed within 6 months of the effective date of the new CBA.  In making his argument, Plaintiff appears to be arguing that even if a new CBA has identical terms to a previous CBA, the 6-month clock resets upon approval of the new CBA.  Plaintiff cites to no case authority to support his position.  Conspicuously absent from Plaintiff's brief is any indication that he engaged in the grievance process after July 1, 2025 on this supposed new claim.  Presumably, Plaintiff would want to benefit from his attempts (made prior to July 1, 2025) to compel Local 74 to grieve his concerns in order to demonstrate that he exhausted his remedies under the CBA.  At the same time, Plaintiff has made no suggestion that he submitted a *new* grievance as to his claims under the July 1, 2025 CBA.  Plaintiff can't have it both ways.

Of course, Defendants also do not cite to any case authority that would suggest that Plaintiff is wrong in his assertion that he is capable of asserting the same and timely claim based on a new CBA.  Nonetheless, Defendants do argue that Article 19 is identical in each iteration of the CBA and neither Plaintiff's claims nor their position have changed.

This Court has not found a case directly on point.  However, in Baltrusaitis v. Int'l Union, United Auto., Aerospace and Agric. Implement Worker of Am., 86 F.4th 1168, (6th Cir. 2023), the Circuit Court noted that a plaintiff could not restart the clock by filing multiple grievances on the same issue in order to "dodge the LMRA's short six-month statute of limitations."  Along similar veins, the Second Circuit has noted that a plaintiff's cause of action accrues when he becomes aware of the union's interpretation of the CBA and that "it is the actual or imputed knowledge of the Union's breach, rather than the employer's violation, of the Collective Bargaining Agreement that starts the limitation period running."  Flanigan v. (Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.) Truck Drivers Local No. 671, 942

F.2d 824, 827-829 (2nd Cir. 1991).  Thus, a plaintiff cannot skirt the 6 month limitation period by filing multiple grievances about the same issue and the limitations period accrues when the plaintiff is aware of the union's opinion on the issue.  On this authority, it would appear that Plaintiff should not be permitted to wait for a new iteration of the CBA, which contains identical language as the previous CBA, in order to assert the same exact claim.  Such a procedure would seem to eviscerate the limitations period.

That being said, there may be some support for permitting Plaintiff's claim to proceed.  In Clayton v. Brennan, 2020 WL 4500947 (E.D. Mo. 2020), the district court found that the plaintiff's claims prior to December 20, 2017 (which was 6 months prior to when the lawsuit was filed) were time-barred because on that date she learned that the union failed to fairly represent her.  However, the court found that claims of breach of duty of fair representation after that date could proceed and noted that after that date, the plaintiff "continued to file grievances with the union" for "claims based on conduct" after December 20, 2017.  Unlike this case, Clayton, appears to involve discrete acts of discrimination for which different grievances were filed within the applicable time period.  In Machado v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers, 454 F.Supp.2d 1056 (D. Hawaii 2006), the district court held that Plaintiff could only pursue claims for breach of a CBA that occurred 6 months prior to the filing of the complaint.  The implication of Machado is that there is no "continuing violation" theory of relief in such cases (unlike in discrimination suits).

Perhaps more on point is Eatz v. DME Unit of Local Union Number 3 of Int'l. Broth. of Elec. Workers, AFL-CIO, 794 F.2d 29 (2nd Cir. 1986).  In that case, the plaintiffs filed suit, alleging breach of the duty of fair representation, related to the negotiation and administration of three CBAs dated 1977, 1979, and 1982.  The district court dismissed the claims as time-barred, having being filed more than 6 months after the 1982 CBA was ratified.  The Court of Appeals

reversed, finding that (in response to the motion to dismiss), plaintiffs alleged various discrete claims of breach of duty occurring within the limitations period including: (1) a continuing failure to enforce a clause limiting the number of scheduled off days to the detriment of plaintiffs; (2) discriminating against plaintiffs at work events after the 1982 CBA was ratified; (3) amending the 1982 CBA to the detriment of plaintiffs; and, (4) attempting to diminish plaintiffs' status in response to a 1983 settlement of an unrelated matter.  The Court held that

> if plaintiffs' claims rested, as Judge Costantino seems to have assumed, solely on the activities of the union and NYRA during the negotiations for and ratification of the several agreements, such claims would have been time-barred at the latest six months after ratification of the last agreement, or by July 26, 1982. However, plaintiffs in opposing the motions to dismiss contended additionally that they are entitled to seek redress for breaches of the union's duty of fair representation on numerous occasions after the 1982 agreement took effect, and the record provides substantial support for plaintiffs' contention.

Id. 794 F.2d at 33-34.  Accordingly, because the plaintiffs alleged discrete and unique acts of breach of duty that occurred within the limitations period, the prior instances of alleged breach of duty, while not actionable, would provide context.  Id. at 34.  Of course, here, Plaintiff did not allege a discrete act of breach of duty but rather a continuation of a previous and identical perceived breach.

This Court finds that Plaintiff's claims are untimely and must be dismissed.  By attempting to limit his claims to events after implementation of the July 1, 2025 CBA, Plaintiff is attempting to improperly skirt the 6 month limitations period in a manner inconsistent with the authority cited above.  Neither Plaintiff's claims, the relevant clauses in the CBAs, nor Defendants' position on the issues changed merely because the CBA was renewed.  To hold otherwise appears absurd.

As a final note, Local 74 mentions in its brief, and more fully sets forth in its reply brief, that Plaintiff must establish that its actions were "arbitrary, discriminatory, or in bad faith" in order to prevail on a breach of duty claim.  See Rogers v. Sw. Bell Tel. Co., 409 Fed.Appx. 55, 57 (8th

Cir. 2011).  Local 74, however, makes no argument that Plaintiff's Complaint fails to sufficiently allege a breach of duty claim, only that it is untimely.

### Conclusion

For the foregoing reasons, Defendant Unite Here Local #74's Motion to Dismiss (Doc. 10), to which Defendant Marriott Hotel Services, Inc. has joined (Doc. 13) is **GRANTED**.  This matter is **DISMISSED with prejudice.**

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of May, 2026